# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ADAM JONES, | ) | CASE NO. 3:19-cv-180 |
| | ) | |
| Petitioner, | ) | DISTRICT JUDGE RICE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE MERZ |
| | ) | |
| JEFF NOBLE, Warden, | ) | **HABEAS CORPUS** |
| Madison Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

## PETITIONER'S OBJECTIONS TO REPORT & RECOMMENDATIONS

Petitioner, Adam Jones, submits objections to the Report & Recommendations (ECF No. 17) filed on November 14, 2019. 28 U.S.C. § 636(B)(1); Fed. R. Civ. P. 72(b). Mr. Jones requests that the Report & Recommendations be rejected as to the merits of the presented challenge, and that his writ for habeas corpus be granted. Alternatively, in line with the Magistrate Judge, he requests a certificate of appealability. A memorandum of law detailing Mr. Jones's objections follows.

Respectfully submitted,

OFFICE OF THE OHIO PUBLIC DEFENDER

/s/Peter Galyardt
PETER GALYARDT #0085439
Asst. Ohio Public Defender

250 East Broad Street – Suite 1400
Columbus, Ohio 43215
(614) 466-5394
(614) 752-5167 (Fax)
peter.galyardt@opd.ohio.gov

COUNSEL FOR ADAM JONES

**MEMORANDUM OF LAW**

**I.  INTRODUCTION**

Mr. Jones is an Ohio prisoner petitioning this Court for habeas corpus relief in accordance with 28 U.S.C. § 2254.  His habeas challenge has one ground: constitutionally ineffective assistance of counsel at trial due to counsel's failure to secure and present medical expert and biomechanics expert testimony on the cause or causes of the child's injuries.  (ECF No. 3).  Contrary to the finding in the Magistrate Judge's Report & Recommendations (ECF No. 17), the state court of appeals unreasonably applied Supreme Court of the United States precedent, *Strickland v. Washington*, 466 U.S. 668 (1984), when it concluded that Mr. Jones was not prejudiced by counsel's deficient performance.  For the reasons that follow—and those provided in Mr. Jones's petition and reply (ECF Nos. 3 and 16)—this Court should reject the recommendations of the Magistrate Judge regarding the merits of the presented challenge, and grant Mr. Jones a writ of habeas corpus.  (ECF No. 17).  Alternatively, this Court should follow the Magistrate Judge's recommendation regarding the issuance of a certificate of appealability.  (*Id.*)

**II.  OBJECTIONS**

**Mr. Jones objects to the conclusion in the Magistrate Judge's Report & Recommendations that the state appellate court reasonably applied precedent from the Supreme Court of the United States, *Strickland v. Washington* 466 U.S. 668 (1984), when it held that he was not prejudiced by his defense counsel's deficient performance in failing to secure and present medical expert and biomechanics expert testimony on the cause or causes of the child's injuries.  (ECF No. 17).**

The Magistrate Judge accurately explained: (1) "There is no direct evidence of [Mr.] Jones's guilt of child abuse…[thus,] the truth of what happened must be inferred from the circumstances;" and (2) "If [Mr.] Jones was to be convicted of causing [the child's] injuries, the jury had to decide his guilt on circumstantial evidence alone."  (ECF No. 17, PageID #1532).

2

The Report & Recommendations also correctly concluded that the state appellate court's deficient-performance "holding is binding on this Court." *Id*. at PageID #1533.

Because of those realities, this is a case "where there is 'no victim who can provide an account, no eyewitness, no corroborative physical evidence and no apparent motive to [harm],'" thus, "the expert '*is* the case.'" *Ceasor v. Ocwieja*, 655 Fed. Appx. 263, 286 (6th Cir. 2016) (emphasis added), quoting *People v. Ackley*, 870 N.W. 2d 858, 867 (Mich. 2015), and Deborah Tuerkheimer, *The Next Innocence Project: Shaken Baby Syndrome and the Criminal Courts*, 87 Wash. U. L. Rev. 1, 27 (2009).

In this case, the State's experts asserted both at trial and in postconviction litigation that they could eliminate all legitimate explanations for the child's injuries, to a reasonable degree of medical certainty, except abuse. (ECF No. 7, PageID #1168-71).  Mr. Jones's medical expert identified a chronic subdural hematoma (rebleed of an old injury) and infection (which the injured child was highly susceptible to) as alternative causes for the injury in question that could not be excluded to a reasonable degree of medical certainty. (ECF No. 7, PageID #1141-60). And Mr. Jones's biomechanical expert revealed two important points: (1) research regarding the amount of force required to cause the injuries in this case that demonstrated such force is generally not possible to be generated by the means hypothesized by the State's experts, and (2) short falls (which the injured victim here did sustain within twelve or so days of the injuries in question and which required hospitalization for a number of days) can cause the injuries involved in both this case and the shaken baby dispute at large. (*Id*.)

Contrary to the Magistrate Judge's conclusion, the defense-favorable expert testimony developed in the state-court postconviction proceedings did not have to establish that abuse could be ruled out in order to be a source of reasonable doubt. (ECF No. 17, PageID #1534-35).

3

Instead, it simply had to create enough uncertainty regarding the abuse-causation conclusion through the differential-diagnosis process to cause at least one juror to be unable to reach a finding of guilt beyond a reasonable doubt.

As all have recognized, this case is entirely about *Strickland* reasonable-probability prejudice. In *Strickland* itself the Supreme Court of the United States established that that standard is neither a preponderance-of-the-evidence standard, nor a more-likely-than-not standard, but is instead, less than both of those. *Strickland*, 466 U.S. at 693-694.

Consequently, the question for this Court is whether Mr. Jones has demonstrated a reasonable probability (which is less than both the preponderance and more-likely-than-not standards) that, with testimony from his medical and biomechanical experts, at least one juror would have harbored a reasonable doubt about whether or not he caused the child's injuries. *See Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 776 (2017). In other words, using a calculus at somewhere less than fifty percent, would the testimony provided in postconviction litigation by Mr. Jones's expert witnesses have caused one juror to "strike a different balance" regarding the testimony from the State's experts, thereby causing a hung jury. *Wiggins v. Smith*, 539 U.S. 510, 537 (2003); *see also Buck* at 776.

Objective scrutiny of all the testifying experts for both sides in this case reveals that none are unimpeachable. In other words, each of them is arguably biased. The State's experts suffered from one or both of the following shortcomings: (1) they never directly treated the injured child, and (2) they fully subscribed to the shaken baby syndrome elimination theory and *ipse dixit* denied the legitimacy of its criticism. (ECF No. 7, PageID #1141-60). Mr. Jones's experts essentially suffered from similar deficiencies, with the obvious difference being that they were subject to the opposite criticism with respect to point two. (ECF No. 7, PageID #1160-72).

Those criticisms, as applied in this case, are reflective of the larger debate on shaken baby syndrome. That is, one side (as did the State in this case) asserts that an abuse-causation finding can be stated to a reasonable degree of medical certainty through a process of differential diagnosis, while the other side (as did Mr. Jones's experts in this case) contends that such certainty cannot be proclaimed from that process, and that other possible causes cannot be ruled out to that degree. (ECF No. 7, PageID #1141-72); *see also generally*, Keith Findley, et al., *Shaken Baby Syndrome, Abusive Head Trauma, and Actual Innocence: Getting It Right*, 12 Hous. J. Health L. & Pol'y 209-312 (2012); Sandeep Narang, M.D., J.D., *A Daubert Analysis of Abusive Head Tauma/Shaken Baby Syndrome*, 11 Hous. J. Health L. & Pol'y 505-633 (2011); Deborah Tuerkheimer, *Science-Dependent Prosecution and the Problem of Epistemic Contingency: A Study of Shaken Baby Syndrome*, 62 Ala. L. Rev. 513-569 (2011); Deborah Tuerkheimer, *The Next Innocence Project: Shaken Baby Syndrome and the Criminal Courts*, 87 Wash. U. L. Rev. 1-58 (2009). Notably, this criticism of the prosecution-favored view of shaken baby syndrome most often cuts both ways, meaning that abuse-causation cannot be ruled in or ruled out to a reasonable degree of medical certainty. *See sources cited id*.

Given the uncertainty surrounding shaken baby syndrome, two of the Magistrate Judge's assertions are fundamentally flawed: (1) full reliance on differential diagnosis in general misses the salient point that in the shaken-baby context, the countervailing view that has been arrived at by a significant number of experts is that the differential-diagnosis process cannot be used to support a statement of abuse-causation to a reasonable degree of medical certainty, and (2) Mr. Jones's experts' inability to provide a high degree of certainty is not somehow damaging to their credibility, but rather is reflective of why many experts argue against a differential-diagnosis

5

approach in the abuse-causation context. (ECF No. 17, PageID #1533); (ECF No. 17, PageID #1534-35).

The weighing of the expert biases on each side is at the heart of the credibility "balance" that every juror is required to undertake. *Wiggins*, 539 U.S. at 537; *see also Buck*, 137 S.Ct. at 776. The dissenting judge in the state appellate court succinctly explained the essence of this balance vis-à-vis the properly calibrated reasonable-probability prejudice standard from *Strickland*:

> [I]n the absence of any medical explanation to the contrary, the jury should believe the unrebutted scientific, medical testimony the State produced and not the denial of a person with "no evidence to support it" and with an obvious reason not to tell the truth.…
>
> The trial court's wholesale rejection of [the] bio-mechanical-based testimony and its total discounting of [the opposing medical expert's] testimony, based on his different professional experiences than the State's physicians, deprived [Mr. Jones] of the right to have the jury make such credibility decisions. I appreciate that in a [postconviction petition] hearing, the court may sometimes make such judgments. However, in this entirely circumstantial case without any other inferentially-supportive evidence of [Mr. Jones's] actions, and where competent evidence exists that is not a "theoretical possibility," confidence in the fairness of the proceeding and the outcome of the case is undermined.

(ECF No. 7, PageID #1173-74).

The state appellate court and the Magistrate Judge found that the conclusions of Mr. Jones's experts could be entirely discounted, but the dissenting judge disagreed. (*Id.*) The Magistrate Judge characterized that dissenting judge as "an eminently reasonable jurist," and offered that fact as evidence "proving that reasonable jurists could indeed doubt the Magistrate Judge's conclusion." (ECF No. 17, PageID #1536).

Against this backdrop, a new trial is required here precisely because there is so much room for reasonable disagreement as to the question of causation. Although there will

6

undoubtedly be fairminded disagreement over final credibility and culpability determinations in this area, there can be no fairminded disagreement over whether, in order for a trial to be reliable and fundamentally fair, the entity tasked with deciding guilt beyond a reasonable doubt in the first instance must have information from both sides in a deeply contested dispute between subject matter experts. Simply put, the jurors must have information from more than just the State's side, and that information must be presented through expert witnesses.

The Magistrate Judge's assertion that Mr. Jones argued that "circumstantial evidence alone, even as interpreted by medical doctors, can never be enough to convict in a child abuse case," is also amiss. (ECF No. 17, PageID #1534). Mr. Jones made no such claim; indeed, the presentation of opposing experts at trial remains the defendant's burden, which is why this is a postconviction litigation case. Rather, he argued that because this is a case in which "the expert *is* the case," in order for the trial to be fair and reliable, the jury had to hear the full picture, comprised of expert testimony on both sides of the argument over the legitimacy of differential diagnosis when it comes to abuse-causation conclusions. (ECF No. 16, PageID #1520). When opposing experts are available in this specialized area, there can be no "wholehearted attack" on the State's case without their testimony. (ECF No. 17, PageID #1533). The state appellate court's and the Magistrate Judge's opposite conclusions are unreasonable applications of the *Strickland* reasonable-probability prejudice prong. Similarly situated, overturned-conviction cases from other jurisdictions demonstrate that juries are disserved in the shaken baby context when they hear only expert testimony presented by the prosecution. *See Ackley*, 870 N.W. 2d at 863-67; *People v. Bailey*, 47 Misc. 3d 355, 374 (NY Sup. Ct. Monroe County 2014); *Del Prete v. Thompson*, 10 F. Supp. 3d 907, 957-58 (N.D. Ill. 2014); *Dobson v. Maryland*, No. 20-K-09-

9572, Order at 26-27 (Cir. Court, Kent County, Apr. 7, 2014); *Wisconsin v. Edmunds*, 308 Wis. 2d 374, 392 (Wis. Ct. App. 2008).

## III. CONCLUSION

Because there can be no fairminded disagreement as to whether a trial without a full presentation of evidence regarding the cause of a child's injuries from competing, qualified experts on each side is fully reliable and fundamentally fair—it is not—the state-court decision holding otherwise was an unreasonable application of *Strickland*.  For that reason, along with those detailed above and those provided in Mr. Jones's petition and reply (ECF Nos. 3 and 16), this Court should reject the recommendations of the Magistrate Judge regarding the merits of the presented challenge, and grant Mr. Jones a writ of habeas corpus.  Alternatively, this Court should follow the Magistrate Judge's recommendation regarding the issuance of a certificate of appealability.  (ECF No. 17, PageID #1536).

    Respectfully submitted,

    OFFICE OF THE OHIO PUBLIC DEFENDER

    /s/Peter Galyardt
    PETER GALYARDT #0085439
    Asst. Ohio Public Defender

    250 East Broad Street – Suite 1400
    Columbus, Ohio 43215
    (614) 466-5394
    (614) 752-5167 (Fax)
    peter.galyardt@opd.ohio.gov

    COUNSEL FOR ADAM JONES

## **CERTIFICATE OF SERVICE**

This *Petitioner's Objections* was filed electronically on November 26, 2019.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Peter Galyardt
PETER GALYARDT #0085439
Asst. Ohio Public Defender

COUNSEL FOR ADAM JONES