# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ADAM JONES,

            Petitioner,      :      Case No. 3:19-cv-180

    - vs -                              District Judge Walter H. Rice
                                         Magistrate Judge Michael R. Merz

JEFF NOBLE, Warden,
  Madison Correctional Institution,

                                  :

            Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 18) to the Magistrate Judge's Report and Recommendations on the merits (ECF No. 17). District Judge Rice has recommitted the case for reconsideration in light of the Objections (ECF No. 19).

Petitioner was convicted on one count of endangering children by recklessly causing serious harm and given an eight-year sentence. He pleads one ground for relief:

> **Ground One:** Adam Jones received constitutionally ineffective assistance of counsel at trial due to counsel's failure to secure and present medical expert and biomechanics expert testimony on shaken baby syndrome.
>
> **Supporting Facts:** Trial counsel failed to secure and present medical expert testimony and biomechanics expert testimony on shaken baby syndrome at trial.

1

(Amended Petition, ECF No. 3, PageID 89). After his conviction was upheld on direct appeal, he obtained assistance from the Ohio Public Defender who represented him in post-conviction and continues to be his counsel in this proceeding. The trial court conducted a three-day evidentiary hearing on his ineffective assistance of trial counsel claim, but declined to grant relief. On appeal, the Second District, Judge Hall wrote a sixty-three page opinion for the majority of a Second District panel; Judge Froelich dissented. Applying *Strickland v. Washington,* 466 U.S. 668 (1984), the Second District found trial counsel had performed deficiently, but that Jones had suffered no prejudice thereby. *State v. Jones*, 2nd Dist. Miami No. 2016-CA-22 2018-Ohio-673, ¶¶ 52-69 (Feb. 23, 2018), jurisdiction declined, 153 Ohio St. 3d 1403, 2018-Ohio-2380 (Jun. 20, 2018); *see also id*. at ¶¶ 70-73 (Froelich, J., dissenting). Importantly, the Second District evaluated prejudice not against "the universe of possible experts who could have been called, but the experts actually put forward by Jones in post-conviction. It found those particular experts – not some hypothetical other experts – not to be credible on the causation issue." (Report, ECF No. 17, PageID 1534).

Because there was no direct testimony of the child abuse, the case depended on circumstantial evidence. Applying the medical/scientific tool of differential diagnosis, the experts testifying at trial eliminated any other possible causation for the injuries here. Jones' experts in post-conviction did not provide a compelling refutation of their analysis.

The Report therefore recommended deferring to the Second District's opinion under AEDPA, but granting a certificate of appealability based on Judge Froelich's dissent (ECF No. 17, PageID 1536).

Jones objects (ECF No. 18).

# Analysis

**The *Strickland* Prejudice Standard**

The gravamen of Petitioner's Objections is that, in order to establish prejudice under the *Strickland* standard, "the defense-favorable expert testimony developed in the state-court postconviction proceedings . . . simply had to create enough uncertainty regarding the abuse-causation conclusion through the differential-diagnosis process to cause at least one juror to be unable to reach a finding of guilt beyond a reasonable doubt." (Objections, ECF No. 18, PageID 1539-40).

Jones' counsel posits that

> [T]his case is entirely about *Strickland* reasonable-probability prejudice. In *Strickland* itself the Supreme Court of the United States established that that standard is neither a preponderance-of-the-evidence standard, nor a more-likely-than-not standard, but is instead, less than both of those. *Strickland*, 466 U.S. at 693-94.
>
> Consequently, the question for this Court is whether Mr. Jones has demonstrated a reasonable probability (which is less than both the preponderance and more-likely-than-not standards) that, with testimony from his medical and biomechanical experts, at least one juror would have harbored a reasonable doubt about whether or not he caused the child's injuries. See *Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 776 (2017). In other words, using a calculus at somewhere less than fifty percent, would the testimony provided in postconviction litigation by Mr. Jones's expert witnesses have caused one juror to "strike a different balance" regarding the testimony from the State's experts, thereby causing a hung jury. *Wiggins v. Smith*, 539 U.S. 510, 537 (2003); see also *Buck*[, 137 S.Ct.] at 776.

(Objections, ECF No. 18, PageID 1540). We may call this the reasonable probability of reasonable doubt by one juror analysis of ineffective assistance of trial counsel.

As to the second prejudice prong of the standard, the Supreme Court held in *Strickland* itself:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. Explaining how its ineffective assistance of trial counsel prejudice had developed, the Supreme Court wrote in *Harrington v. Richter*:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

562 U.S. 86, 111-112 (2011); *accord Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington*, 586 U.S. at 112.

Jones's counsel's statement of the standard (Objections, ECF No. 18, PageID 1540) confuses burden of proof language ("preponderance") with degree of probability. We know from Harrington that the required probability of a different outcome can be less than "more likely than not" only in the rarest of cases. Expressed in mathematical terms (which courts rarely do), "more likely than not" means a probability of more than fifty percent

What is the different result or outcome which must be shown to have been probable? Counsel posit that if they can show that one juror's certainty would have been reduced enough so that that juror could not find guilt beyond a reasonable doubt, the *Strickland* prejudice standard has been satisfied. For this proposition they rely on *Wiggins*, which was a capital case in which the Supreme Court decided prejudice *de novo*, there being no state court decision on that prong of *Strickland*. 539 U.S. at 534. Wiggins had an extensive history of child abuse, physical and sexual. The Court found that "had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." 539 U.S. at 536.

> Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance. Cf. *Borchardt* v. *State,* 367 Md. 91, 139-140, 786 A.2d 631, 660 (2001) (noting that as long as a single juror concludes that mitigating evidence outweighs aggravating evidence, the death penalty cannot be imposed).

*Id.* at 537. Thus, the different result or outcome which the Supreme Court found was reasonably probable was a sentence less than death.

Then same is true of *Buck v. Davis*, the other capital Supreme Court case on which Jones relies, *Buck v. Davis* (Objections, ECF No. 18, PageID 1540). There, the deficient performance consisted of eliciting supposed expert testimony to the effect that Buck was more likely to be violent in the future because he was black. In Texas, as in Maryland, a single juror can prevent a death sentence. The Court found that "without Dr. Quijano's testimony on race, at least one juror would have harbored a reasonable doubt about whether Buck was likely to be violent in the future." 139 S.Ct. at 776.

Death, of course, is different. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Had

5

Jones' posited single juror been unable to vote for conviction, the result would not have been acquittal, but a hung jury and mistrial. A dissenting juror in a non-capital case cannot affect the final outcome in the way a dissenting capital juror does.

Jones cites no authority for the proposition that a mistrial is a sufficiently different outcome from conviction to "count" for *Strickland* prejudice analysis. From a defendant's perspective, it may not be a better result because the State can then re-try him and correct any mistakes it made the first time. In any event, Jones has not shown that in this respect the Second District's decision is an unreasonable application of clearly established Supreme Court precedent.

**The Competing Medical Evidence**

In his Reply, Jones states that "[t]he current status of the shaken-baby dispute can best be characterized as a stalemate. It involves two entrenched, oppositional camps. . . . a factfinder cannot reliably and fairly decide a specific dispute in this area without hearing the entirety of each competing viewpoint." (ECF No. 16, PageID 1512-14). The Report insisted, in contrast, that the jury's task in this case "was not to decide general issues in the forensic community about whether the "traditional" theory of shaken baby syndrome should prevail or some competing theory. It is this case, not some other generalized or hypothesized child abuse case, which they jury had to decide."

In his Objections, Jones continues to suggest the relative balance of the medical experts.

> Objective scrutiny of all the testifying experts for both sides in this case reveals that none are unimpeachable. In other words, each of them is arguably biased. The State's experts suffered from one or both of the following shortcomings: (1) they never directly treated the injured child, and (2) they fully subscribed to the shaken baby syndrome elimination theory and *ipse dixit* denied the legitimacy of

6

> its criticism. (ECF No. 7, PageID #1141-60). Mr. Jones's experts essentially suffered from similar deficiencies, with the obvious difference being that they were subject to the opposite criticism with respect to point two. (ECF No. 7, PageID #1160-72).

(Objections, ECF No. 18, PageID 1540.) This description of the record is misleading at best.

Dr. Charles Stevenson, a testifying expert and pediatric neurosurgeon, treated Marianne, the victim, by performing emergency brain surgery on her when she was airlifted from Upper Valley Medical Center to Cincinnati Children's Hospital. *Jones*, 2018-Ohio-673 at ¶¶ 3-4. He was thus clearly qualified to testify as an expert treating physician. Dr. Kathi Makoroff, a pediatrician at Cincinnati Children's Hospital who specializes in child abuse, "was a consultant in Marianne's treatment and ruled out causes of the child's subdural hematoma other than a traumatic injury involving 'a great bit of force.'" *Id.* at ¶ 9. Thus neither Dr. Stevenson nor Dr. Makoroff suffered from not having treated the victim[1].

Jones claims both these physicians so fully subscribed to the shaken baby syndrome that the categorically "denied the legitimacy of its criticism." As a source for that claim, Jones cites twenty pages of the Second District's opinion (Reply, ECF No. 16, citing State Court Record, ECF No. 7, PageID 1141-60. The Magistrate Judge has re-read those twenty pages and finds no quotation from either Dr. Stevenson or Dr. Makaroff that denies the legitimacy of criticizing shaken baby syndrome. Nor is there any finding by the Second District that that is what either of them said.

Thus, both of Jones' criticisms of Drs. Stevenson and Makaroff in the Objections are refuted by reading the portions of the record cited in the Objections to prove their bias.

In contrast, the Objections significantly underplay the evident biases of Dr. Robert

---

[1] Dr. Robert Rothfeder, Jones' medical expert in post-conviction, brushed off Dr. Makoroff's involvement in Marianne's treatment by denying that she contributed to the treatment. *Jones*, 2018-Ohio-673, at ¶ 30.

Rothfeder, Jones' medical expert in post-conviction. It is not just that he rejected Stevenson and Makaroff's traumatic abuse diagnosis here. As the Second District found, he categorically rejects that diagnosis in every case where there is not eyewitness testimony to the abuse. At the time of the post-conviction hearing, he had retired from medical practice, obtained a law license, and spent the last ten to fifteen years dealing with child abuse head injury cases, testifying only for the defense. *Jones*, 2018-Ohio-673, at ¶ 22. He is not a neurologist and did not dedicate his practice to pediatrics. *Id*. He is not an ophthalmologist, but opined Marianne's retinal hemorrhages had no diagnostic value. *Id*. at ¶ 32. He did not give an opinion to a reasonable degree of medical certainty on the cause of Marianne's injuries. *Id*. at ¶ 25. Moreover, Kenneth Monson, the biomechanical expert whose omission is claimed to have prejudiced Jones, admitted that serious injuries from short falls, the defense hypothesis about cause, "go from 'almost impossible to do to it could happen'" and offered no opinion in support of the short fall theory. *Id*. at ¶ 36.

While as a general cultural proposition it may be that there are two warring "camps" on shaken baby syndrome, the two camps are very unevenly represented in the record of this particular case. As to their relative representation in the medical profession generally, Dr. Robert Shapiro, the State's expert in rebuttal in post-conviction, testified of Dr. Rothfeder's position:

> * * * It's a tiny fraction of the medical community that speaks a very loud voice. There's broad acceptance and concurrence among neurosurgeons, neurologists, radiologists, pediatricians in the diagnosis of shaken baby syndrome. We have no debate. There is no debate in the medical field, except for a small handful of individuals who, for whatever reasons, feel that they need to speak very loudly about a so-called debate. The debate is trumped up and doesn't exist.

*Jones*, 2018-Ohio-673, at ¶ 44. If *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), were applied to Dr. Rothfeder's testimony, it is doubtful to the Magistrate Judge that he could pass muster. The tests under *Daubert* include

1) whether the expert's scientific technique or theory can be, or has been, tested;
2) whether the technique or theory has been subject to peer review and publication;
3) the known or potential rate of error of the technique or theory when applied;
4) the existence and maintenance of standards and controls; and
5) whether the technique or theory has been generally accepted in the scientific community.

*United States v. Beverly,* 369 F.3d 516, 528 (6th Cir. 2004), quoting *Daubert*, 509 U.S. at 592-95. While *Daubert* is, of course, not constitutionally mandated, the tests of sound science it adopted are generally accepted; Ohio Evid. R. 702 was substantially re-written in light of *Daubert*. Dr. Rothfeder's testimony has not been shown to qualify under any of these tests and, per Dr. Shapiro, is rejected by the medical community. The Second District's decision in this case, rejecting Dr. Rothfeder's testimony as demonstrating *Strickland* prejudice and being generally rejected in the scientific community, *Jones*, 2018-Ohio-673, at ¶ 66, is not an objectively unreasonable application of *Strickland*.

**Conclusion**

Having reexamined the case in light of the Objections, the Magistrate Judge again recommends it be dismissed with prejudice but Jones be granted a certificate of appealability on his sole ground for relief.

December 27, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).