IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ADAM JONES, | : |
|     Petitioner, | |
| v. | :   Case No. 3:19-cv-180 |
| JEFF NOBLE, Warden, Madison Correctional Institution, | :   JUDGE WALTER H. RICE |
|     Respondent. | : |

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN PART UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #17) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. #21); SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS THERETO (DOCS. ##18, 22); DISMISSING WITH PREJUDICE AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS (DOC. #3); GRANTING CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*; JUDGMENT TO ENTER IN FAVOR OF RESPONDENT AND AGAINST PETITIONER; TERMINATION ENTRY

Petitioner Adam Jones was convicted in state court on one count of child endangering and sentenced to eight years imprisonment. This matter is currently before the Court on his Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, Doc. #3. Jones raises just one ground for relief, an ineffective-assistance-of-counsel claim.

On November 14, 2019, United States Magistrate Judge Michael R. Merz issued a Report and Recommendations, Doc. #17, recommending that the Petition

be dismissed with prejudice, but that Jones be granted a certificate of appealability and leave to appeal *in forma pauperis.* Jones filed timely Objections, Doc. #18, and Respondent filed a reply, Doc. #20. The Court recommitted the matter to Magistrate Judge Merz, who issued a Supplemental Report and Recommendations, Doc. #21. Jones again filed timely Objections, Doc. #22.

This Court is required to make a *de novo* review of those portions of the Reports and Recommendations to which proper Objections have been filed. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

## A.

Jones's girlfriend had a four-year-old daughter named Marianne. In August of 2010, Marianne was left in Jones's care. He maintains that he put her down for a nap, and 20 minutes later, found her on the floor, gurgling, with her eyes rolled back in her head. Marianne was taken to the hospital. She had a large knot on her forehead, bruising on her left ear, and a large subdural hematoma in her brain.

Jones was charged with child endangering. At trial, Jones's attorney suggested that the hematoma may have been caused by the child's complex medical condition or by a fall that she had experienced approximately three weeks earlier. The Government's expert witnesses dispelled these theories, ruling out all potential causes of injury other than abusive head trauma a/k/a "shaken-baby syndrome." Defense counsel cross-examined these expert witnesses, but presented no expert witnesses of his own. The jury convicted Jones.

2

Jones filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, alleging ineffective assistance of counsel. At the evidentiary hearing, to support his theory that the hematoma could have been caused by something other than abusive head trauma, Jones presented expert witness testimony of Kenneth Monson and Dr. Robert Rothfeder.

Dr. Rothfeder, an emergency room physician, interpreted Marianne's CT scan to show the presence of a chronic subdural hematoma, which could have been several weeks old, and an acute subdural hematoma, which caused new bleeding. However, he could not render an opinion within a reasonable degree of medical certainty as to the cause of the chronic subdural hematoma or when it originated. He testified, however, that it was possible that it resulted from Marianne's earlier fall. *State v. Jones*, 2018-Ohio-673, 106 N.E.3d 353, at ¶¶24-25 (2d Dist.).

Kenneth Monson, a bioengineering professor, testified that "the acceleration levels from shaking someone are too low to produce a head injury such as bleeding on the brain." *Id.* at ¶34. Although Monson testified that the hematoma could have resulted from a short fall off the bed, he conceded that this would have been "quite unlikely." *Id.* at ¶¶36-37.

Jones also presented testimony from his trial attorney, Andrew Wannemacher, who admitted that he should have hired an expert witness to counter the Government's expert witnesses, and that his failure to do so was not a strategic move. He explained that one expert witness refused to testify at trial,

3

and others wanted more money than Wannemacher believed the court would authorize. *Id.* at ¶38.

At the evidentiary hearing, the Government presented rebuttal testimony from Dr. Robert Shapiro, a child-abuse pediatrician. Shapiro testified that Marianne's hematoma could not have been caused by a short fall, and that biomechanical studies were of limited use in determining the cause of injuries. *Id.* at ¶40. Shapiro also gave multiple "compelling" reasons for rejecting Dr. Rothfeder's theory that Marianne had an older, chronic subdural hematoma. *Id.* at ¶41.

Based on the testimony presented, the trial court overruled the petition for post-conviction relief, and the Second District Court of Appeals affirmed that decision. The Second District, in a lengthy opinion, held that Jones had failed to satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Although the court found deficient performance on the part of Jones's trial counsel in failing to retain expert witnesses, 2018-Ohio-673, at ¶62, it concluded that the trial court's credibility analysis was not unreasonable, and that the trial court did not abuse its discretion in finding that there was no reasonable probability that the result of the proceeding would have been different had the evidence presented at the post-conviction evidentiary hearing been presented at trial. In short, that evidence "is not sufficient to undermine our confidence in the outcome of his trial." *Id.* at ¶68.

4

The Second District agreed with the trial court that the testimony of Jones's expert witnesses had negligible probative value.  The Government's witnesses had much more clinical experience and, unlike Jones's experts, were able to state their opinions to a reasonable medical certainty.  *Id.* at ¶ 65.

The court noted that Dr. Rothfeder apparently believed that, absent an eyewitness or an admission by the defendant, it would be impossible to conclude that the injuries were caused by child abuse, and "in those circumstances he does not believe in the abusive head trauma/shaken baby diagnosis at all." *Id.* Moreover, on cross-examination, Dr. Rothfeder admitted that he was wrong when he stated that Marianne had abnormal coagulation at the time she was admitted to the hospital.  *Id.* at ¶ 27.  The court found that this "would have resulted in further loss of credibility with the jury." *Id.* at ¶65.

As to Monson, the Second District found that, "taking Monson's testimony at face-value leads to the conclusion that an intensely forceful event occurred in Marianne's bedroom," a conclusion consistent with the State's expert witnesses and contrary to Dr. Rothfeder's.  *Id.* at ¶66.  In addition, there are no biomechanical studies "measuring the effect of impact forces on the brains of live humans." *Id.*

The Second District acknowledged that a small minority of the medical community rejects any diagnosis of abusive head trauma.  However, it found no abuse of discretion in the trial court's conclusion that the post-conviction evidence presented by Jones did not support a finding of prejudice.  *Id.* at ¶¶67-68.

5

Judge Froelich, however, filed a dissenting opinion. He concluded that, had Jones's expert witnesses testified at trial, there is a reasonable probability that the result would have been different. *Id.* at ¶70. In Judge Froelich's opinion, the jury should have been presented with expert testimony from both sides and permitted to make its own credibility determinations. In depriving the jury of that opportunity, he believed that "confidence in the fairness of the proceeding and the outcome of the case is undermined." *Id.* at ¶74.

**B.**

In his Report and Recommendations, Doc. #17, Magistrate Judge Merz found that the Second District did not unreasonably apply *Strickland* in concluding that Jones had failed to establish the requisite prejudice from his attorney's failure to present the expert witness testimony of Dr. Rothfeder and Kenneth Monson at trial. Magistrate Judge Merz stated that it was doubtful that Dr. Rothfeder would have qualified as an expert witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), given the doctor's strong belief that shaken baby syndrome must be ruled out in each case where there is neither an admission nor an eyewitness to the alleged abuse.[1] Citing the numerous criticisms raised against Dr. Rothfeder at the evidentiary hearing, Magistrate Judge Merz found that it is very unlikely that Rothfeder's testimony would have changed the result of the trial.

---

[1] Jones notes, however, that the trial judge did find Dr. Rothfeder, an emergency room physician, qualified to testify as an expert in the area of child abuse.

6

Magistrate Judge Merz also noted that Mr. Monson's opinion was largely consistent with the opinions of the Government's expert witnesses. Doc. #17, PageID##1534-35. He therefore recommended that the Petition for Writ of Habeas Corpus be dismissed with prejudice. Nevertheless, citing the dissenting opinion for the proposition that reasonable jurists could disagree on this issue, Magistrate Judge Merz recommended granting a certificate of appealability.

Jones filed Objections to the Report and Recommendations, arguing that Magistrate Judge Merz erred in finding that the Second District had not unreasonably applied the prejudice prong of *Strickland.* Citing *Buck v. Davis*, –U.S.–, 137 S. Ct. 759 (2017), and *Wiggins v. Smith*, 539 U.S. 510 (2003), Jones argued that he has demonstrated a reasonable probability that "with testimony from his medical and biomechanical experts, at least one juror would have harbored a reasonable doubt about whether or not he caused the child's injuries." Doc. #18, PageID#1540. According to Jones, the jury must be permitted to hear both sides of the expert witness debate concerning shaken baby syndrome. In the alternative, he requests a certificate of appealability.

Respondent filed a Response to Jones's Objections, Doc. #20, pointing out that the Second District and Magistrate Judge Merz had each explained at length why testimony from Jones's expert witnesses likely would not have changed the outcome of the jury's verdict. Respondent also argued that the dissenting opinion did not justify a certificate of appealability because this case does not rise to the level of an "extreme malfunction" that warrants habeas corpus relief. *See*

7

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.") (internal quotations omitted).

On recommittal, Magistrate Judge Merz issued a Supplemental Report and Recommendations, Doc. #21, adhering to his original suggestions.  He noted that, in *Harrington v. Richter,* 562 U.S. 86 (2011), the Supreme Court held that the relevant inquiry under the second prong of *Strickland* is whether it is "reasonably likely the result would have been different. . . The likelihood of a different result must be substantial, not just conceivable." *Id.* at 111-12 (internal quotations omitted).

Magistrate Judge Merz rejected Jones's argument that it is sufficient to create reasonable doubt in the mind of one juror.  He noted that Jones had cited to *Buck* and *Wiggins*, both capital cases, in which reasonable doubt in the mind of one juror during the penalty phase of the trial could prevent a death sentence.  In contrast, in a non-capital case such as Jones's, reasonable doubt in the mind of one juror would result in a hung jury and a mistrial, likely followed by a second trial at which the State could correct any mistakes it had made in the first trial.  The Magistrate Judge stated that "Jones cites no authority for the proposition that a mistrial is a sufficiently different outcome from conviction to 'count' for *Strickland* prejudice analysis."  Doc. #21, PageID##1556.

8

Jones filed Objections to the Supplemental Report and Recommendations, Doc. #22. He disagrees with Magistrate Judge Merz's conclusion that *Strickland* requires the defendant to show a reasonable probability of an acquittal. The Court SUSTAINS this particular Objection, given that there is Sixth Circuit law contrary to the Magistrate Judge's conclusion.

In *Walker v. Hoffner*, 534 F. App'x 406 (6th Cir. 2013), the Sixth Circuit held that, in order to satisfy the prejudice prong of *Strickland*, a defendant need not show that, but for counsel's deficient performance, he would have been acquitted. Rather, the defendant need show only that, because of counsel's errors, "his trial was unfair such that we can no longer be confident in the verdict." *Id.* at 412-13. "The Supreme Court has never held that prejudice under *Strickland* requires a court to examine whether acquittal was likely; the standard has always been concerned with the probability of a different result based on the fairness of the proceeding." *Id.* at 412. In *Walker*, the court cited several different outcomes that would have been better than a conviction, "including a hung jury, or guilty by reason of mental insanity." *Id.*[2]

Accordingly, under Sixth Circuit law, evidence sufficient to create reasonable doubt in the mind of one juror may be sufficient to satisfy the prejudice prong of *Strickland.* The relevant question, under *Strickland,* is whether, but for

---

[2] *But see Hobdy v. Raemisch*, 916 F.3d 863, 881 (10th Cir. 2019) ("Nothing in *Strickland* suggests that the prejudice standard can be satisfied by something less than an acquittal.").

9

counsel's errors, there is a reasonable probability that the "result of the proceeding" would have been different.[3] 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The relevant question, then, is whether there is a reasonable probability that, but for counsel's failure to present expert witness testimony, Jones would not have been convicted of child endangering. More specifically, did his attorney's deficient performance render the trial "unfair such that we can no longer be confident in the verdict"? *Walker*, 534 F. App'x at 413.

In the Supplemental Report and Recommendations, Magistrate Judge Merz again found that the Second District's conclusion, that Jones had failed to establish the requisite prejudice, was not an objectively unreasonable application of the second prong of *Strickland*. Doc. #21. With respect to the competing medical evidence concerning a diagnosis of shaken baby syndrome, Magistrate Judge Merz noted that, unlike Jones's expert witnesses, one of the Government's expert witnesses had treated Marianne and another had acted as a consultant in her treatment.

Moreover, unlike Dr. Rothfeder, who categorically rejected the abusive head trauma diagnosis in every case in which there was no admission and no eyewitness to the abuse, there was no evidence to suggest that the Government's

---

[3] The Court agrees that "the result of the proceeding" means the hearing or trial that gave rise to the ineffective-assistance-of-counsel claim. Subsequent case developments, such as a conviction following a hung jury and declaration of a mistrial, are largely irrelevant in analyzing the prejudice prong.

10

witnesses "so fully subscribed to the shaken baby syndrome that they categorically 'denied the legitimacy of its criticism.'" *Id.* at PageID##1557-59.  Magistrate Judge Merz noted that Dr. Rothfeder's beliefs had been generally rejected in the medical community.  Moreover, Mr. Monson offered no opinion in support of Jones's theory that Marianne's hematoma was caused by a short fall from the bed.

Jones has also filed an Objection to this portion of the Supplemental Report and Recommendations, Doc. #22.  He argues that Dr. Rothfeder's criticism "goes to the assertion of abuse-causation to a reasonable degree of medical certainty by experts. . . It is the assertion that abuse *is*, rather than that *it could be*, the cause of the injuries that creates the divide, both in this case and more globally." *Id.* at PageID#1567.  He maintains that, because shaken baby syndrome is an etiology rather than a diagnosis, it is impossible to conclude to a reasonable degree of medical certainty that the injuries at issue were the result of child abuse. *Id.* at PageID#1572.  Jones cites to numerous scholarly articles discussing this topic.

Having reviewed the parties' briefs and carefully considered their arguments, the Court OVERRULES Jones's Objections to this portion of the Supplemental Report and Recommendations.  As the Second District noted, the function of the court is not to solve disagreements among the medical community at large, but to determine whether the trial court abused its discretion in determining that counsel's failure to present the same evidence at trial that was presented at the post-conviction hearing would not support a reasonable probability of a different result. *State v. Jones*, 2018-Ohio-673, at ¶68.

11

The numerous criticisms of the testimony of Dr. Rothfeder and Mr. Monson, as detailed by the trial court, the Second District Court of Appeals, and by Magistrate Judge Merz, lead this court to conclude that the Second District did not unreasonably apply the prejudice prong of *Strickland.* As Magistrate Judge Merz noted in his Report and Recommendations, the State's expert witnesses convinced the jury, beyond a reasonable doubt, that Jones caused Marianne's injuries, and they did so by using the technique of differential diagnosis to rule out other possible causes. The Second District concluded that Dr. Rothfeder and Mr. Monson did not present credible, compelling evidence to rebut the State's causation theory. The undersigned agrees with Magistrate Judge Merz that "the Second District's conclusion[,] that failure to present these two particular experts did not result in prejudice[,] is not an unreasonable application of *Strickland.*" Doc. #17, PageID#1535.

Counsel's deficient performance did not render the trial so unfair that confidence in the jury's verdict is undermined. Accordingly, habeas corpus relief is not justified in this case. Nevertheless, the Court agrees with Magistrate Judge Merz that, because reasonable jurists could disagree on this issue, a certificate of appealability is warranted and Jones should be given leave to appeal *in forma pauperis*.

## C.

For the reasons set forth above, the Court ADOPTS IN PART and REJECTS IN PART Magistrate Judge Merz's Report and Recommendations (Doc. #17), and Supplemental Report and Recommendations (Doc. #21), and SUSTAINS IN PART and OVERRULES IN PART Petitioner's Objections thereto (Docs. ##18, 22).

The Court DISMISSES WITH PREJUDICE the Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. #3).  Judgment shall be entered in favor of Respondent and against Petitioner.  However, for the reasons expressed by Magistrate Judge Merz, the Court GRANTS a certificate of appealability and leave to appeal *in forma pauperis.*

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: May 18, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE